**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| GREGORY JOHNSON, | : | PRISONER CASE NO. |
| Plaintiff, | : | 3:11-cv-542(JCH) |
| | : | |
| v. | : | |
| | : | |
| RICCARDO RUIZ, ET AL. | : | January 9, 2012 |
| Defendant. | : | |

**INITIAL REVIEW ORDER**

The plaintiff, Gregory Johnson, incarcerated at MacDougall Correctional Institution

in Suffield, Connecticut, has filed a complaint pro se under 42 U.S.C. § 1983.  He names

Dr. Riccardo Ruiz and Correctional Officers Lewis, Richardson and Doe as defendants.

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks

monetary relief from a defendant who is immune from such relief."  Id.  Rule 8 of the

Federal Rules of Civil Procedure requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks

and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a

formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of

'further factual enhancement,'" does not meet the facial plausibility standard.  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).  Although courts have an obligation to liberally construe a pro se complaint, see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

Johnson alleges that on March 30, 2008, he was incarcerated in Cheshire Correctional Institution.  At approximately 6:00 p.m., he entered the shower room in his housing unit, and he and another inmate had a verbal argument that turned into a fist fight. During the fight, another inmate grabbed Johnson from behind by the neck, choked him, and caused him to pass out.  When Johnson became conscious again, he noticed blood and what appeared to be semen in the area of his rectum.  He washed himself off and went to his cell.

The following day, Correctional Officer Richardson came to Johnson's cell and Johnson explained what had happened in the shower.  Officer Richardson left Johnson's cell without offering any assistance.  Johnson was embarrassed and afraid to leave his cell.  The following day, Johnson insisted that he be permitted to explain to a supervisor what had happened to him in the shower.  Officers transferred Johnson to a restrictive housing unit and allegedly began to investigate Johnson's claims.  A mental health worker met with Johnson regarding the emotional trauma that he had suffered.  In addition, Dr. Ruiz examined him and listened to his allegations.  At the end of the examination, Dr. Ruiz informed Johnson that he would return with a rape kit, but failed to do so.

Department of Correction officials permitted Johnson to provide a statement to the Connecticut State Police.  Johnson was unable to identify the inmates who had attacked him in the shower.

During the first week of April 2008, Officer Richardson came to Johnson's cell, and they began to argue.  Officer Richardson allegedly spit at Johnson through the trap door of Johnson's cell in the presence of Officer Lewis.  Johnson reported the incident to Officer Tanguay.  Officer Lewis did not report what he had allegedly witnessed regarding the incident.  Johnson spoke to Warden Lee about the incident involving Officer Richardson and asked that he be permitted to press charges against Officer Richardson through the Connecticut State Police Department.  No one from the State Police Department came to see Johnson.  Johnson never learned of the outcome of the investigations into the alleged assault upon him by other inmates or the incident involving Office Richardson.  Workers in the Mental Health Unit at the prison treated the plaintiff for emotional distress related to both incidents.

## I.    SECTION 1983 CLAIMS

### A.    Failure to Protect

Under Farmer v. Brennan, 511 U.S. 825 (1994), prison officials have a duty to make reasonable efforts to ensure inmate safety.  This duty includes protecting inmates from harm at the hands of other inmates.  See id. at 832; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).  To establish a constitutional violation, a prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety.  See Farmer, 511 U.S. at 834.  Deliberate indifference exists where the official both "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated.  See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985).

The court concludes that Johnson has not alleged facts to state a plausible claim that the defendants failed to protect him from harm.  There are no allegations that any of the defendants knew of any problems between the plaintiff and other inmates in his housing unit.  Nor does the plaintiff allege that the defendants knew that he might get assaulted in the shower room.  Thus, the plaintiff has not alleged that the defendants knew of an excessive risk to his safety and disregarded that risk.  The plaintiff's Eighth Amendment claim that the defendants failed to protect him from harm fails to state a claim and is dismissed.  See 28 U.S.C. § 1915A(b)(1).

B.    Deliberate Indifference to Medical Needs

Johnson also asserts that defendants Richardson and Ruiz were deliberately indifferent to his mental health and medical needs.  Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must

produce death, degeneration or extreme pain.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  See Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).  Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  Therefore, to assert such a claim, a plaintiff must allege sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See Estelle v. Gamble, 429 U.S. 104, 104-06 (1976); Smith, 316 F.3d at 184 ("not every lapse in prison medical care will rise to the level of a constitutional violation") McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("there must be some conduct that 'shocks the conscience' or a 'barbarous act'") (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

Johnson did not report his assault until the day after it had occurred.  Although Officer Richardson may not have summoned medical and mental health assistance immediately, Johnson concedes that he was seen by mental health staff and Dr. Ruiz during the second day after the incident.  Johnson reported to both the mental health worker and Dr. Ruiz that he had suffered emotional trauma due to the assault.  Johnson does not allege that he suffered any specific physical injuries.

Johnson claims that Dr. Ruiz failed to perform a rape test kit on him.  Research has revealed no constitutional or statutory requirement that a rape test kit be used on an alleged rape victim.  Johnson has not alleged that Dr. Ruiz otherwise failed to treat him for

5

any physical injuries that he suffered.  Johnson alleges that he was placed on suicide watch following the incident and that he did receive mental health treatment from workers in the mental health unit.  The court concludes that Johnson has failed to allege that any of the defendants were deliberately indifferent to his medical or mental health needs.  These claims are dismissed.  See 28 U.S.C. Section 1915A(b)(1).

C.    Excessive Force

Johnson's allegation that Officer Richardson spat at him through the slot in his cell door also does not rise to the level of a violation of his Eighth Amendment rights.  When an inmate alleges that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim.  See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  "The objective component relates to the seriousness of the injury; however, 'the use of excessive force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'"  Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (quoting Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)).  The subjective component inquires "whether the defendants had a wanton state of mind when they were engaging in the alleged misconduct."  Davidson, 32 F.3d at 30 (internal citation omitted).  The Eighth Amendment does not recognize claims based on a de minimis use of force unless the use of force is "of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10.

Johnson's allegations fall far short of the standard for a constitutional violation.  He alleges only that Officer Richardson spat at him and Officer Lewis failed to intervene.  Although these actions may well have been unnecessary and avoidable, they do not implicate the Eight Amendment.  See Hudson, 503 U.S. at 9; see also Candelaria v.

6

Coughlin, 787 F. Supp. 368, 374-75 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir. 1992)
(inmate's claim that guard pushed fist into his neck dismissed for failure to allege physical
force sufficient to constitute an Eighth Amendment violation).  Accordingly, the claim that
defendant Richardson used excessive force when he spat at Johnson through the cell door
while Officer Lewis looked on is dismissed.

      D.     Failure to Prosecute

      Johnson alleges that he spoke to Warden Lee regarding the alleged sexual assault
by unknown inmate(s) and the assault by Officer Richardson, but he never learned of the
results of any investigations into these incidents.  Johnson also asserts that he asked to
speak to the Connecticut State Police in order to press charges against Officer Richardson
for spitting at him, but Warden Lee did not arrange for him to meet with a Connecticut
State Trooper.

      Johnson has no constitutionally protected right to a proper investigation.  See Lewis
v. Gallivan, 315 F. Supp.2d 313, 316-17 (W.D.N.Y. 2004) ("There is . . . no constitutional
right to an investigation by government officials.") (internal citations omitted); Santossio v.
City of Bridgeport, No. 3:01CV1460(RNC), 2004 WL 2381559, at *4 (D. Conn. Sept. 28,
2004) ("the United States Constitution does not grant plaintiffs a right to an adequate
investigation or adequate after-the-fact punishment") (citing cases).  Furthermore, a victim
of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of
the alleged perpetrator of the crime.  See Leeke v. Timmerman, 454 U.S. 83, 87(1981)
(per curiam) (inmates alleging beating by prison guards lack standing to challenge prison
officials' request that magistrate not issue arrest warrants); Linda R. S. v. Richard D., 410
U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a

judicially cognizable interest in the prosecution or nonprosecution of another"); <u>McCrary v.</u>
<u>County of Nassau</u>, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not
have a constitutional right to compel government officials to arrest or prosecute another
person."); <u>Osuch v. Gregory</u>, 303 F. Supp. 2d 189, 194 (D. Conn. 2004) ("An alleged victim
of a crime does not have a right to have the alleged perpetrator investigated or criminally
prosecuted.").

Johnson's allegation that defendant Lee did not allow Johnson to contact the
Connecticut State Police to press charges against Officer Richardson does not state a
constitutional claim.  Because Johnson had no right to an investigation and had no right to
have Officer Richardson prosecuted, his allegations regarding inadequate or improper
investigations and the failure to permit him to press charges against Officer Richardson fail
to state a claim upon which relief may be granted and are dismissed.  <u>See</u> 28 U.S.C. §
1915A(b)(1).

## II.   STATE LAW CLAIMS

The complaint also includes state law claims.  It does not, however, allege facts
sufficient to invoke this court's diversity jurisdiction.  "The district courts shall have original
jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of
$75,000.00, exclusive of interest and costs, and is between (1) citizens of different
states . . . ."  28 U.S.C. § 1332(a).  A person's citizenship for purposes of diversity
jurisdiction is his domicile, which is defined as the state in which a person is both present
and intends to remain for the indefinite future.  <u>See Mississippi Band of Choctaw Indians v.</u>
<u>Holyfield</u>, 490 U.S. 30, 48 (1989).  There is a rebuttable presumption that the domicile of a
prisoner before he was imprisoned remains his domicile while he is in prison.  <u>See Sullivan</u>

v. Freeman, 944 F.2d 334, 337 (7th Cir. 1991) (citations omitted); see also Tiuman v. Canant, No. 92 Civ. 5813 (JFK), 1994 WL 471517 (S.D.N.Y. Sept. 1, 1994) (an inmate's domicile prior to incarceration remains his domicile for diversity purposes).

Although the plaintiff was incarcerated in a Connecticut prison facility when he commenced this action, he states that he was a resident of New York prior to his incarceration.  The defendants are all listed as residents of Connecticut.  Assuming the plaintiff has retained his pre-incarceration domicile in New York, he has met the diversity of citizenship requirement under 28 U.S.C. § 1332.  The plaintiff did not, however, identify a specific amount of damages in the complaint.  Moreover, the court on its own cannot discern from the allegations that the amount in controversy exceeds $75,000.  Thus, the complaint fails the requirements to invoke this court's diversity jurisdiction.

## III.    ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1)    All federal claims against the defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The court declines to exercise supplemental jurisdiction over any state law claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 26 (1966) (holding that, where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts).  If the plaintiff chooses to appeal this decision, he may not do so in forma pauperis, because such an appeal would not be taken in good faith.  See 28 U.S.C. § 1915(a)(3).

(2)    **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the Complaint and this Initial Review Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(3)      The Clerk is directed to enter judgment for the defendant and close this

case.

**SO ORDERED** this 9th day of January, 2012, at Bridgeport, Connecticut.


          /s/ Janet C. Hall
Janet C. Hall
United States District Judge